**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BRENDA RIANO,**

                **Plaintiff,**

vs.                                         **5:13-cv-00352
(MAD/TWD)**

**TOWN OF SCHROEPPEL; TOWN BOARD OF
THE TOWN OF SCHROEPPEL; PATRICK J.
NUGENT, individually and in his official capacity as
Town Supervisor; PAUL M. GILBERT, in his official
capacity as Town Councilman; RICHARD P. KLINE,
in his official capacity as Town Councilman;
WILLIAM GODFREY, in his official capacity as
Town Councilman; WILLIAM W. VAN DYKE, in his
official capacity as Town Councilman; ROBERT
DALTON, individually and in his official capacity as
Code Enforcement Officer of the Town of Schroeppel;
and PAUL D. CASPER, JR., individually as former
Supervisor of the Town of Schroeppel,**

                **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**NEIL M. GINGOLD, ATTORNEY**       **NEIL M. GINGOLD, ESQ.**
5178 Winterton Drive
Fayetteville, New York 13066
Attorneys for Plaintiff

**RICE & AMON**                                 **TERRY RICE, ESQ.**
Four Executive Boulevard, Suite 100
Suffern, New York 10901
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 1, 2013, Plaintiff commenced this suit by filing a notice of petition and verified

petition in New York State Supreme Court, Onondaga County. *See* Dkt. No. 1 at 5-50

("Petition").[1] In the Petition, Plaintiff asserts claims arising out of Defendants' issuance of a demolition permit and subsequent Stop Work Order. Plaintiff seeks a declaratory judgment pursuant to Section 3001 of the New York Civil Practice Law and Rules and damages under 42 U.S.C. § 1983. *See id.* On March 28, 2013, Defendants timely removed the action to this Court pursuant to 28 U.S.C. § 1441 *et seq.*, on the grounds that it "arises under the Constitution and law of the United States and involves a federal question." *See* Dkt. No. 1 at 2. Presently before the Court is Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 17. Plaintiff has opposed Defendants' motion. *See* Dkt. No. 25.

## II. BACKGROUND[2]

According to Plaintiff's Petition, Plaintiff was, at all relevant times to this action, a resident of Phoenix, New York. *See* Petition ¶ 2. The named Defendants in this action are all employed, or were employed, by the Town of Schroeppel (the "Town"). Defendant Dalton is the Town's Code Enforcement Officer. *See id.* ¶ 6. Defendants Casper and Nugent are the former and current Town Supervisors, respectively. *See id.* ¶¶ 5, 7. The remaining named Defendants are all members of the Town Council. *See id.* ¶ 4.

In 2007, the Town passed a local law entitled "Local Law Providing for the Administration and Enforcement of the New York State Uniform Fire Prevention and Building Code," which provides as follows:

---

[1] In order to avoid confusion, the Court's references to specific page numbers for entries on the docket will cite to the page number assigned by the Court's electronic filing system.

[2] The factual background is taken from Plaintiff's petition and is presumed true solely for the purpose of this motion.

> This local law provides for the administration and enforcement of
> the New York State Uniform Fire and Prevention and Building
> Code (Uniform Code) and the State Energy Conservation
> Construction Code (the Energy Code) in this Town. Except as
> otherwise provided in the Uniform Code, or other state law, or other
> section of this local law, all buildings, structures, and premises,
> regardless of use or occupancy, are subject to the provisions of this
> local law.

*Id.* ¶ 9 (quoting Local Law No. 1 of 2007 of the Town of Schroeppel ("Local Law No. 1")). Local Law No. 1, Section 5 provides that a building permit which conforms to the requirements of the Uniform Code is a prerequisite for projects, including demolition of any building or structure. *See id.* ¶ 36.

Article 18 of the New York Executive Law, known as the New York State Uniform Fire Prevention and Building Code Act, provides as follows:

> 1. The provisions of this article and of the uniform fire prevention
> and building code shall supersede any other provision of a general,
> special, or local law, ordinance, administrative code, rule or
> regulation inconsistent or in conflict therewith[.]
>
> * * * *
>
> 2. Nothing herein shall be construed as affecting the authority of
> the state labor department to enforce a safety or health standard
> issued under provisions of sections twenty-seven and twenty-seven-
> a of the labor law.

*Id.* ¶ 54 (quoting N.Y. Exec. Law § 383). The New York State Department of Labor, pursuant to its authority under New York State law, has promulgated regulations regarding asbestos surveys under 12 N.Y.C.R.R. Part 56. Section 56-5.1(g) mandates that an "asbestos survey shall be completed and submitted . . . prior to commencing work." 12 N.Y.C.R.R. § 56-5.1(a); *see also* Petition ¶ 58.

On March 24, 2011, Plaintiff sought to obtain a permit from the Town Code Enforcement Office ("CEO") to demolish a building which formerly housed her bowling alley business, the

3

Phoenix Bowl Inn Sports Center ("Bowl Inn"). Plaintiff was instructed by a clerk in the CEO that she needed to submit a permit application, a certificate of issuance, and a thirty-dollar ($30.00) fee. *See* Petition ¶¶ 10-17, 24. Plaintiff subsequently provided the CEO with the requested documentation, thereby obtaining a demolition permit from the CEO on March 25, 2011 for the Bowl Inn. *See id.* ¶¶ 18-19.

Plaintiff commenced demolition of the Bowl Inn on April 19, 2011, and on April 20, 2011, Plaintiff was verbally issued a Stop Work Order for the demolition by Defendant Dalton, on the grounds that an asbestos survey had not been conducted prior to issuance of the demolition permit. *See id.* ¶¶ 20, 24, 72. On April 25, 2011, Plaintiff received a written Notice of Violation and Order to Comply from the New York State Department of Labor, Division of Asbestos Control. This notice informed Plaintiff that, since she had failed to prepare an asbestos survey prior to the commencement of demolition of the Bowl Inn, the entire site was deemed contaminated. As a result, all of the remaining debris was to be assumed contaminated with asbestos-containing material and, therefore, had to be handled and disposed of as asbestos. *See id.* ¶¶ 27-28.

Prior to receiving the verbal Stop Work Order and written Notice of Violation, Plaintiff had contracted with non-party Alpco Recycling ("Alpco") for the demolition of the Bowl Inn. *See id.* ¶ 76. The contract called for Alpco to demolish the entire building, recycle or sell all material capable of being recycled or sold, level the grade of the site, and remove any remaining debris. Following the State Department's determination that the debris from the demolition site was deemed contaminated by asbestos, Alpco could not sell or recycle any of the scrap metal and other debris. Consequently, Alpco refused to perform the remainder of its obligations under the contract, and Plaintiff has not completed demolition and removal. *See id.* ¶¶ 76-77.

Additionally, Plaintiff had contracted with a non-party retail sales company to purchase the Bowl Inn property for development. The contract required that the site be cleared of the Bowl Inn structure. Since Plaintiff did not satisfy this condition, the developer subsequently withdrew from the contract for sale. *See id.* ¶¶ 78-79.

According to Plaintiff's petition,

> Local Law No. 1 is in violation of the State of New York Labor
> Law and its regulations dealing with asbestos[.]
>
> * * * *
>
> The Town of Schroeppel Code Enforcement Officer is prohibited
> and would be negligent under the State Labor Law to issue a
> Demolition Permit for a building or structure, knowing there has
> not been prepared an asbestos survey for that building or structure,
> for that violates the Labor Law.
>
> * * * *
>
> [Plaintiff] contends that [Local Law No. 1] is invalid and
> unenforceable, both on its face and as construed by [Defendants],
> in that [Local Law No. 1] is in clear conflict with the preemptive
> State Labor Law and its regulations as to the asbestos and
> demolition activities associated therewith, when the Town issued a
> Demolition Permit to [Plaintiff] on March 25, 2011, allowing her
> to commence the demolition of her building, and then three and a
> half weeks later the Town Code Enforcement Officer issued a
> verbal Stop Work Order to [Plaintiff] based on [Plaintiff] not
> having prepared an asbestos survey of her building prior to
> commencing the demolition.

*Id.* ¶¶ 75, 90, 98. Plaintiff's first cause of action seeks a declaration pursuant to N.Y. C.P.L.R. § 3001 as to the validity of Local Law No. 1 and whether it was "negligently administered" by Defendants. *See id.* ¶¶ 99-100, A.[3] Plaintiff's second cause of action seeks monetary damages

---

[3] In an October 18, 2013 Memorandum-Decision and Order, the Court remanded Plaintiff's first cause of action to Onondaga County Supreme Court, while retaining jurisdiction over the federal claims. *See* Dkt. No. 8. This case was stayed pending resolution of the state-law

(continued...)

5

arising out of Defendants' conduct, as well as a determination that Defendants deprived Plaintiff of her rights under the Due Process, Equal Protection, and Contract Clauses of the United States Constitution and comparable provisions of the New York State Constitution. *See id.* ¶¶ 101-102.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

---

³(...continued)
claims.

6

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 554, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.[4]

**B.     Due Process**

*1. Procedural Due Process*

Before addressing Plaintiff's substantive due process claim, the Court will first consider Plaintiff's procedural due process claim. "'[T]o establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case.'" *Zito v. Town of*

---

[4] In Plaintiff's response to the motion to dismiss, she asserts that "the proper pleading standard does not require a plaintiff to plead specific facts." Dkt. No. 25 at 7 (citation omitted). Further, Plaintiff quotes from two Supreme Court cases for the proposition that "'[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41 (1957); *Leatherman v. Tarrant County NIC Unit*, 507 U.S. 163 (1993)). In *Twombly*, the Supreme Court overturned the pleading standard set forth in *Conley*, which had provided that a motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In *Twombly*, the Supreme Court provides that "*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough," has "earned its retirement," and is now "best forgotten." *Twombly*, 550 U.S. at 561-62.

7

*Babylon*, 543 Fed. Appx. 25, 27 (2d Cir. 2013) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). Defendants contend that Plaintiff "challenged the issuance of the permit herein in various contexts, including a State Court action which rejected her claims.[5] As a result, Plaintiff does not possess a viable procedural due process claim as a matter of law." Dkt. No. 19 at 19. In response, Plaintiff raises two arguments. First, Plaintiff contends that New York State Supreme Court Judge Norman W. Seiter's ruling to dismiss Plaintiff's petition in state court "was limited in its scope," focusing solely on "whether Local Law No. 1 of 2007 required the Code Enforcement Officer to provide a notice to plaintiff to obtain or prepare an asbestos survey as a condition of obtaining a demolition permit." Dkt. No. 25 at 12. Thus, Plaintiff seems to suggest that she was not afforded a meaningful opportunity to discuss her alleged Section 1983 injuries.

Upon careful review of Judge Seiter's Order, the Court notes several findings made by the state court that are connected to Plaintiff's underlying federal claims. For instance, Judge Seiter explicitly found that "it was [Plaintiff's] and her contractor's responsibility to comply with the state law and regulation" regarding the asbestos survey. Dkt. No. 11-1 at 2. Judge Seiter also held that "an unknown asbestos condition is, in and of itself, unsafe. Such an unsafe condition is a proper basis for an oral stop work order and this court finds that [Defendants] *acted properly in its issuance of an oral stop work order*." *Id.* at 3 (emphasis added). It appears, therefore, that Judge Seiter's review was not solely limited, as Plaintiff contends, as to whether Defendants provided adequate notice of the asbestos survey requirement. In fact, Judge Seiter also considered Defendants' actions following the issuance of the demolition permit; namely, the subsequent Stop Work Order which denied Plaintiff the ability to further demolish the Bowl Inn and thereby satisfy Plaintiff's contractual obligations with non-party Alpco.

---

[5] *See Riano v. Town of Schroeppel et al.*, No. 2014-0317 (N.Y. Sup. Ct. June 6, 2014).

8

Plaintiff had the ability to challenge the administrative decision/Stop Work Order through an Article 78 proceeding, and her failure to do so is fatal to her procedural due process claim. *See Beachwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 156-57 (2d Cir. 2006); *see also Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 215 n.9 (N.D.N.Y. 2012) (citations omitted). New York State statutes provide an opportunity for full and complete judicial review of all administrative determinations. The availability of such judicial review satisfies the dictates of procedural due process. *See G.I. Home Developing Corp. v. Weis*, 499 Fed. Appx. 87, 89 (2d Cir. 2012); *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 881-82 (2d Cir. 1996); *Petruso v. Schlaefer*, 474 F. Supp. 2d 430, 437 n.1 (E.D.N.Y. 2007), *aff'd*, 312 Fed. Appx. 397 (2d Cir. 2009). In fact, Plaintiff challenged the issuance of the permit herein in various contexts, including a State Court action which rejected her claims.

Plaintiff contends that she was "denied the ability of a timely state court review within the normal 90 days allowed by New York Town Law for an Article 78 proceeding."[6] Dkt. No. 25 at 11. Specifically, Plaintiff contends that Defendants "initially lulled petitioner into believing that the [Defendants] [were] looking into a plan or plans to correct the acknowledged error committed by the [CEO] in initially issuing the demolition permit on March 25, 2011, and then issuing a verbal *Stop Work Order* on April 20, 2011." Petition ¶ 95. Plaintiff fatally admits, however, that she received acknowledgment from Defendants regarding their alleged error in issuing the demolition permit "a few days inside the ninety day statute of limitations under the New York Town Law." Petition ¶ 96. Since Plaintiff acknowledges that the statute of limitations period had

---

[6] Plaintiff misstates the applicable statute of limitations period for an Article 78 proceeding. Here, the applicable statute of limitations for an Article 78 proceeding is in fact four months. N.Y. C.P.L.R. § 217(1) (McKinney 2014) (stating that "a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner").

9

not yet expired, her failure to timely bring an Article 78 proceeding further precludes Plaintiff's procedural due process claim. *See O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, n.7 (E.D.N.Y. Sept. 5, 2012) (explaining that "because one must show that the state procedural remedies are inadequate in order to bring a Section 1983 due process claim, the availability and non-use of such procedures would bar a Section 1983 claim. Thus, the legal defect in the due process claim is the failure to use available, post-deprivation remedies, rather than some general failure to exhaust") (citing *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988)).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's procedural due process claim.

### *2. Substantive Due Process*

"To state a substantive due process claim, a plaintiff must plead that (1) 'a constitutionally cognizable property interest is at stake,' and (2) the defendant's alleged actions depriving her of that right were 'not merely incorrect or ill-advised,' but 'arbitrary, conscience-shocking, or oppressive in the constitutional sense.'" *Finn v. Anderson*, 592 Fed. Appx. 16, 20 (2d Cir. 2014) (quoting *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006)).

#### *a. Cognizable Property Interest*

The requirements of a cognizable property interest in a substantive due process claim are straightforward:

> It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner. A plaintiff has a legitimate claim of entitlement to a particular benefit if, absent

> the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted. Where a local regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit. An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit. The issue of whether an individual has such a property interest is a question of law since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise.

*Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) (alterations, citations, and internal quotation marks omitted); *see also Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34-35 (2d Cir. 2010); *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 334 (E.D.N.Y. 2010). The analysis changes, however, "when a plaintiff is issued a permit that is then revoked. In such cases the 'clear entitlement' test is inapplicable because a permit, once issued, is 'unquestionably' property of the holder." *Missere v. Gross*, 826 F. Supp. 2d 542, 556 n.9 (S.D.N.Y. 2011) (citing *Soundview Assocs.*, 725 F. Supp. 2d at 334).

To this end, Plaintiff correctly recognizes that the Town's issuance of the demolition permit "gave plaintiff the right to demolish," and "it was no longer a discretionary right of the Town to grant or deny." Dkt. No. 25 at 10. However, it has also been held in this Circuit that "New York law allows for the revocation and/or modification of a building permit issued in error such that plaintiffs cannot establish that they had or have a federally protected property right to the permit." *Petruso v. Schlaefer*, 312 Fed. Appx. 397, 400 (2d Cir. 2009). Therefore, Plaintiff contends that Defendants "should have conditioned the issuance on the plaintiff's obtaining the asbestos survey" and "should have held the application until the asbestos survey was presented," and, therefore, Plaintiff argues that the demolition permit was issued "in error." Plaintiff cannot claim to have a cognizable property interest in a permit that she herself contends should never have been issued.

11

To the extent that Plaintiff argues that she had a cognizable property interest in the "right to demolish" and that such right was interfered with by the Stop Work Order, the argument must fail. First, Defendants did not revoke the demolition permit. Rather, Defendants issued a Stop Work Order until such time as Plaintiff could comply with the applicable state law. As such, Plaintiff was not deprived of any interest in the permit. *See Gottlieb v. Village of Irvington*, 69 F. Supp. 2d 553, 556 (S.D.N.Y. 1999) ("Plaintiffs apparently want the Court to equate the Village's temporary interference with their right to continue building – because of the stop work order – with a denial or revocation of a building permit. Those two things cannot be equated, however"); *Witt v. Village of Mamaroneck*, 992 F. Supp. 2d 350, 367 (S.D.N.Y. 2014) (holding that, "even if the building permit itself represented a valid property interest, *Gottlieb* makes clear that, because that permit was never actually revoked, any such property interest was never denied") (citation omitted).

Moreover, the fact that demolition had begun does not aid Plaintiff. In *Petruso v. Schlaefer*, 474 F. Supp. 2d 430 (E.D.N.Y. 2007), the Eastern District of New York dismissed a due process claim that rested "primarily on the argument that the near completion of construction gave Plaintiffs a vested right to the permit under New York State law." *Id.* at 438. The court held that the plaintiffs' completion of ninety percent of their project did not alter the outcome, noting that "where a zoning board finds that a permit was issued in error that permit may be revoked, even in cases where construction has taken place." *Id.* at 433, 438-39. The Second Circuit not only affirmed this portion of the district court's opinion, but it explicitly adopted the Eastern District's reasoning. *See Petruso v. Schlaefer*, 312 Fed. Appx. 397, 400 (2d Cir. 2009) ("Substantially for the reasons stated by the District Court . . ., we conclude that New York law allows for the revocation and/or modification of a building permit issued in error such that

12

plaintiffs cannot establish that they had or have a federally protected property right to the permit"). As such, even if the demolition permit was issued in error, Plaintiff did not obtain a vested property right simply because she had begun demolition.

Additionally, the Town Code provides the Code Enforcement Officer with discretion to issue a stop work order in certain situations. Specifically, the Town Code provides that "[t]he Code Enforcement Officer shall issue a stop-work order to halt . . . [a]ny work that is being conducted in a dangerous or unsafe manner in the opinion of the Code Enforcement Officer, without regard to whether such work is or is not work for which a building permit is required, and without regard to whether a building permit has or has not been issued for such work[.]" Town Code § 38-7(A). As Judge Seiter already determined on remand, "[s]uch an unknown asbestos condition is, in and of itself, unsafe. Such an unsafe condition is a proper basis for an oral stop work order[.]" Dkt. No. 11-1 at 3. Given the discretion the Code Enforcement Officer had to issue the Stop Work Order, it is clear that Plaintiff had no vested property interest in the demolition permit or to demolish the building. *See A.B.C. Home Furnishing, Inc. v. Town of East Hampton*, 947 F. Supp. 635, 645 (E.D.N.Y. 1996).

Plaintiff also claims that she had a protected property interest in the property "she owned for over many years – that being the bowling center property[.]" Dkt. No. 25 at 10. However, such a claim does not assert a cognizable property interest since ownership of property is not the appropriate focus of the analysis. Had Plaintiff's property been re-zoned for a purpose inconsistent with its current use, Plaintiff's ownership of the property would be relevant. The fact she owned the property for many years and operated a bowling facility on it does not provide Plaintiff with the unfettered right to then demolish the facility without complying with local and state regulations.

13

Accordingly, the Court grants Defendants' motion to dismiss to the extent it finds that Plaintiff's substantive due process claim fails to plausibly allege a cognizable property interest.

### *b. Conscience-Shocking Conduct*

Assuming, however, that Plaintiff did have a cognizable property interest in the demolition permit, the issuance of the permit and subsequent Stop Work Order by Defendants does not amount to conscience-shocking conduct sufficient to state a violation of substantive due process. "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity . . . .'" *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (citing *Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002)). In gauging the shock value of the alleged conduct, "negligently inflicted harm is categorically beneath the threshold," while "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Considering again that State Supreme Court Judge Seiter held that (1) Defendants were not required to request an asbestos survey from Plaintiff prior to issuing the demolition permit, and (2) Defendants acted properly in issuing Plaintiff a Stop Work Order, such adjudicated actions certainly do not rise to a level of outrageous or egregious sufficient to warrant an alleged substantive due process violation. At best, Plaintiff has alleged that Defendants were negligent in issuing a demolition permit without first ensuring that an asbestos survey had been completed in compliance with state law. Negligence, however, is insufficient to support a substantive due process claim. *See Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 276 (2d Cir. 2011) (holding that "[c]ommon

negligence is categorically insufficient to shock the conscience") (citation omitted).

Accordingly, the Court grants Defendants' motion to dismiss to the extent it finds that Plaintiff's substantive due process claim fails to plausibly allege conscience-shocking conduct.

**C.     Equal Protection**

Plaintiff further concedes that the Petition "fail[s] to assert a factual basis for an equal protection claim." Dkt. No. 25 at 12. Plaintiff's concession, however, is prefaced on Defendants' alleged refusal to provide Plaintiff with her demolition permit application file. Essentially, Plaintiff is requesting pre-trial discovery in order to "more artfully and factually assert an equal protection violation." *Id.* at 13. Since Plaintiff admittedly has not pled "enough facts to state a claim to relief that is plausible on its face," the Court grants Defendants' motion to dismiss as to Plaintiff's equal protection claim. *Twombly*, 550 U.S. at 570.

"A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). In order to succeed on such claim, "plaintiff must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks omitted).

Here, Plaintiff seems to contend that because "[t]he Town of Schroeppel, and every other municipality in New York State does in fact require that demolition applicants prepare an asbestos survey prior to the issuance of Demolition Permits," Defendants "knowingly caused [Plaintiff] to unknowingly, and inadvertently, expose herself to civil, and possible criminal

prosecution" when they unlawfully issued her the demolition permit and subsequent Stop Work Order. *See* Petition ¶¶ 131, 136. Defendants argue, however, that the Petition "is devoid of any allegations of the existence of comparitors, let alone facts to substantiate that they are similarly situated in all relevant aspects." Dkt. No. 19 at 26. The Court agrees. The Petition fails to plausibly allege the existence of similarly situated individuals treated differently from her or that there was no rational basis for the difference in treatment. Without such allegations, the claim must be dismissed.

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's equal protection claim.

### D. Contracts Clause Claim[7]

In the Petition, Plaintiff alleges that Defendants' issuance of the Stop Work Order violated Article I, Section 10 of the United States Constitution, which provides that "'[n]o State shall . . . pass any . . . Law impairing the Obligations of Contracts.'" *See* Petition ¶ 102 (quoting U.S. CONST. art. I, § 10). For the most part, the named Defendants are not legislative bodies and therefore are not proper parties in an action pursuant to the Contracts Clause. *See Kinney v. Conn. Judicial Dep't*, 974 F.2d 313, 314 (2d Cir. 1992) (finding that the prohibition in the Contracts Clause "is aimed at the legislative power of the State, and not at the decisions of its courts, the acts of administrative or executive boards or officers, or the doings of corporations or individuals") (citing *New Orleans Water-Works Co. v. La. Sugar Ref. Co.*, 125 U.S. 18, 30, 8 S. Ct. 741, 31 L. Ed. 607 (1888)); *Jamaica Ash & Rubbish Removal Co., Inc. v. Ferguson*, F. Supp. 2d 174, 177 (E.D.N.Y. 2000) ("[T]he Contracts Clause applies only to legislative bodies").

---

[7] Although Defendants have not addressed this specific claim in their motion to dismiss, the Court will conduct review *sua sponte* with respect to the sufficiency of Plaintiff's pleading.

Even assuming the Contracts Clause could be applied to the named Defendants, the Court finds that Plaintiff's claim would still fail. When asserting a violation of the Contracts Clause, the plaintiff is required to show three elements: (1) there is a contractual relationship; (2) there has been a change in law that impairs that relationship; and (3) the impairment is substantial and unjustified. *See General Motors Corp. v. Romein*, 503 U.S. 181, 185-86 (1992); *see also Coney Islands Resorts, Inc. v. Giuliani*, 103 F. Supp. 2d 645, 655 (E.D.N.Y. 2000) (citation omitted). Local Law No. 1 was passed in 2007 while the contracts that Defendants are alleged to have infringed upon were not entered into until 2011. Further, the state regulation requiring an asbestos survey was enacted in 1987 and most recently amended on March 21, 2007. *See* 12 N.Y.C.R.R. § 56-5.1. As such, Plaintiff has not alleged that a change in the law impaired her contractual relationships. Rather, she has alleged that the implementation of a pre-existing law impaired her contractual relationships, which is outside the scope of the Contracts Clause.

Accordingly, having reviewed Plaintiff's Contracts Clause claim *sua sponte*, the Court finds that Plaintiff has failed to plausibly allege this cause of action; and, therefore, the claim is dismissed.

### E. Qualified Immunity

Lastly, named Defendants Nugent, Dalton, and Casper individually contend that they are entitled to qualified immunity. *See* Dkt. No. 19 at 34. "The doctrine of qualified immunity shields public officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Whether a defendant actually

violated a plaintiff's rights is not the central issue: "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer*, 468 U.S. 183, 190 (1984). Indeed, "qualified immunity only applies where a government official performs a discretionary, as distinct from a ministerial function." *Toussie v. Cnty. of Suffolk*, 806 F. Supp. 2d 558, 588 (E.D.N.Y. 2011) (citing *Waltz v. Town of Smithtown*, 46 F.3d 162, 169 (2d Cir. 1993)).

Notably, a defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006). In this regard, the defense will succeed only where entitlement to qualified immunity can be established "based [solely] on the facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Having considered the parties' arguments, the Court finds that the individual Defendants are entitled to qualified immunity. Plaintiff's constitutional challenges pursuant to § 1983 revolve around Defendants alleged unlawful issuance of a demolition permit and subsequent Stop Work Order. The Court finds that it was objectively reasonable to issue Plaintiff the Stop Work Order. The complaint makes clear that, when Defendant Dalton issued the Stop Work Order, Plaintiff was not in compliance with New York law as a result of her failure to obtain an asbestos survey prior to commencing demolition. As such, an objectively reasonably official would not believe that he was violating Plaintiff's rights.

Accordingly, the Court grants Defendants' motion to dismiss to the extent it finds that the individual Defendants are entitled to qualified immunity.

## F.     Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citations omitted). "'[W]hen monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973)). There is a sufficient showing of personal involvement of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See id.* (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Upon careful review of Plaintiff's petition, the Court finds insufficient facts to indicate the personal involvement of either Defendant Nugent or Defendant Casper in the alleged constitutional deprivations. The extent of Defendant Casper's involvement in the alleged controversy is (1) his receipt of a letter from the Town Attorney indicating "that it was totally [Plaintiff's] error in obtaining her Demolition Permit by not obtaining and submitting an asbestos survey to the Town of Shroeppel," and (2) a telephone interview between Defendant Casper and an investigative reporter discussing the controversy. *See* Petition ¶¶ 126, 150. Moreover, the extent of Defendant Nugent's involvement in the alleged controversy is (1) a failure to respond to Plaintiff's request for a copy of her permit application, and (2) hearsay testimony from a non-

19

party contractor suggesting that Defendant Nugent was interested in purchasing Plaintiff's property through condemnation proceedings. *See id.* ¶¶ 152-54. The above allegations fail to plausibly allege that Defendants Casper and Nugent were personally involved in the alleged constitutional violations.

Accordingly, the Court finds that, in the alternative, Plaintiff has failed to plausibly allege that Defendants Casper and Nugent were personally involved in any of the alleged unconstitutional actions.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's petition is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 10, 2015
    Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge